UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID H. CRUM,

       *Plaintiff*,

    v.

COURT SERVICES AND OFFENDER
SUPERVISION AGENCY, et al.,

       *Defendants*.

Civil Action No. 24-2564 (TJK)

## MEMORANDUM OPINION

Following his conviction for attempted second-degree sexual abuse and release from prison, David Crum was placed on supervised release and had to register as a sex offender for ten years. He sues the Court Services and Offender Supervision Agency for the District of Columbia, the United States Attorney for the District of Columbia, and MedStar Georgetown University Hospital for alleged violations of his civil and constitutional rights stemming from his conditions of release. Defendants move to dismiss. The Court Services and Offender Supervision Agency and the U.S. Attorney argue that the Court lacks jurisdiction over Crum's claims, and MedStar asserts that Crum fails to state a claim against it. The Court agrees with both, so it will grant their motions and dismiss the case.

**I.    Background**

Though Crum's handwritten filings are not a model of clarity, he appears to challenge the terms of his court-ordered supervision. In 2019, he pleaded guilty to second-degree sexual abuse in the Superior Court for the District of Columbia and was sentenced to thirty-six months' imprisonment followed by ten years of supervised release. *See United States v. Crum*, 2018-CF1-000667 (D.C. Super. Ct. Oct. 15, 2019). After he served his sentence, Crum was subject to the supervision

of the Court Services and Offender Supervision Agency for the District of Columbia ("CSOSA") and had to register as a sex offender as part of his conditions of supervision. *Id.* At some point after he was released, Crum says that he visited MedStar Georgetown University Hospital ("MedStar")—a "not-for-profit, acute-care, teaching and research hospital"—to refill a prescription. *See* ECF No. 1-1 at 5; ECF No. 9 at 2.[1] Hospital staff allegedly checked his name against a sex offender registry and, after discovering Crum's criminal record, had security escort him during the hospital visit. ECF No. 1-1 at 5; ECF No. 9 at 1. Crum felt "insulted," as he "did nothing to them" and was just "minding his own business." ECF No. 9 at 1; *see also* ECF No. 13 at 2. Although he acknowledges that the "records [are] public," Crum says they "are specifically for the Metropolitan Police" and not for entities "like Med-Star." ECF No. 13 at 2.

Crum also alleges that CSOSA and the United States Attorney are "penaliz[ing]" him "unfairly and unprovoked for the same D.C. Superior Court Conviction (although the Plaintiff have been [sic] Clean for Three years)." ECF No. 1-1 at 5 (emphasis in original). CSOSA, Crum says, "refused to respect" Crum's "privacy" and to "acknowledge" that "the past three years . . . caused significant inconvenience and harassment." *Id.* at 10. Crum also states that "[t]he United States' Attorneys are Trained Lawyers who knew before-hand the systematic federal and local violations they helped cause" when the D.C. Superior Court imposed "the unlawful supervision in question." *Id.* at 11. The ten-year "supervision," Crum claims, was supposedly "added . . . at the last minute" such that Plaintiff had no "time to . . . contest the information that they used to enhance" his sentence." ECF No. 12 at 2–3.

---

[1] *About Our Hospital*, MedStar Geo. U. Hosp., https://www.medstarhealth.org/locations/medstar-georgetown-university-hospital/about-our-hospital (last visited April 16, 2025).

Proceeding pro se, Crum sued CSOSA, the U.S. Attorney, and MedStar in the Superior Court of the District of Columbia. ECF No. 1-1. CSOSA and the U.S. Attorney removed the case. ECF No. 1. As best the Court can tell, Crum asserts that "all of these Defendants" are liable for "federal Civil Rights Violations" and "Under Bivens" for the imposition (or terms) of his supervised release condition. ECF No. 1-1 at 10; *see id.* at 2 (alleging "Systematic Violations of federal Statute [sic]" that "are Both Counter-Productive and a total waste of tax-paying funds and resources"); *id.* at 3 (describing his "unlawful[] sentence of supervision" as a "clear, premeditated Bivens violation that's ongoing"). CSOSA and the U.S. Attorney, he alleges, "repeatedly do what they want without concern for the Due Process and U.S. Civil Rights of People of Color." *Id.* at 5. And MedStar, he claims, is also "violat[ing] . . . U.S. Privacy Laws." *Id.* Crum seeks "10 million Dollars from each Defendant." *Id.* at 2.[2]

CSOSA and the U.S. Attorney move to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 5. Medstar separately moves to dismiss for failure to state a claim under Rule 12(b)(6). ECF No. 7.[3]

---

[2] Crum also moved for a temporary restraining order, asking that the Court order Defendants to "[c]ease all actions immediately and investigate the pure facts." ECF No. 1-1 at 5. The Court denied the motion for failing to show that he would suffer irreparable harm and that the terms of his supervision were "likely unlawful." Min. Order of Sept. 18, 2024. Crum renewed his arguments in a motion for injunction, which the Court denied as well. *See* Min. Order of Oct. 14, 2024.

[3] The Court notes that Crum also appears to challenge the removal of this case. *See* ECF No. 9 at 2 ("This specific Case should have Remained in D.C. Superior Court . . . ."); ECF No. 13 at 1 ("[T]he Plaintiff didn't ask for this Action to be Moved to the District Court."). Although Crum does not present any traditional objections to removal, the Court explains why removal was proper. *See Terrell v. Mr. Cooper Grp., Inc.*, No. 20-cv-496 (CKK), 2020 WL 4673420, at *2 (D.D.C. Aug. 12, 2020) (considering a pro se plaintiff's motion to remand as a "threshold question"). CSOSA is an "agency" of the United States, and the U.S. Attorney is a United States "officer," so either party may "remove[]" a case "commenced in a State court . . . to the district court of the United States for the district . . . embracing the place wherein it is pending." 28 U.S.C. § 1442(a). And although Crum does not argue that removal was defective under § 1446, the Court

3

## II.     Legal Standards

On a motion to dismiss under Rule 12(b)(1), the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (citation omitted). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences'" that it can "derive[] from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted). Although pro se plaintiffs like Crum are generally held to a "less stringent standard," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the "factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) notion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks and citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, because Crum is pro se, the Court considers not only the facts in his complaint, but also those alleged in his

---

finds no defect. Defendants removed the case within thirty days of the U.S. Attorney's receipt of the complaint on August 15, 2024. *See* 28 U.S.C. § 1446(b). Thus, to the extent Plaintiff requests remand, his request is denied.

opposition to Defendants' motion to dismiss. *See Watson v. D.C. Water & Sewer Auth.*, 249 F. Supp. 3d 462, 464 (D.D.C. 2017).

**III. Analysis**

    **A. The Court Lacks Subject-Matter Jurisdiction Over Crum's Claims Against CSOSA and the U.S. Attorney**

Absent a waiver, sovereign immunity bars suits against the United States, its agencies, and its employees sued in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Governor of Ga. v. Madrazo*, 26 U.S. 110, 123–24 (1828). Such a waiver "cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted). Crum's claims against CSOSA—a federal agency—and the U.S. Attorney—a federal official—bring this doctrine into play. *See Ali v. D.C. Ct. Servs.*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) (holding that sovereign immunity barred a suit against CSOSA and its employees in their official capacities); *Crockett v. Mayor of the D.C.*, 181 F. Supp. 3d 70, 71 (D.D.C. 2013), *aff'd*, 561 F. App'x 3 (D.C. Cir. 2014) (dismissing claims against U.S. Attorney for the District of Columbia on sovereign immunity grounds). So unless the United States has waived immunity for Crum's claims, the Court lacks jurisdiction. *See Meyer*, 510 U.S. at 475. It hasn't.

Crum purports to assert constitutional tort claims against CSOSA and the U.S. Attorney under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the federal analogue to suits brought against state officials under 42 U.S.C. § 1983. *See* ECF No. 1-1 at 10 ("All of these Defendants are guilty of federal Civil Rights Violations Under Bivens . . . Regarding the D.C. Superior Court Conviction."); *see also id.* at 5, 11. But *Bivens* is a private damages action against federal employees for violating an individual's constitutional rights. *See Bivens*, 403 U.S. at 389. Thus, no "*Bivens*-type cause of action" lies "directly against a federal agency" like CSOSA. *Mullen v. BOP*, 843 F. Supp. 2d 112, 116 (D.D.C. 2012) (citation omitted).

5

Nor can one "be maintained against" a federal official like the U.S. Attorney "in his or her official capacity." *Scinto v. BOP*, 608 F. Supp. 2d 4, 8–9 (D.D.C. 2009) (citation omitted).[4] In other words, because "the United States has not consented to be sued for damages based . . . on constitutional violations," *Cofield v. United States*, 64 F. Supp. 3d 206, 213 (D.D.C. 2014), the Court lacks jurisdiction over any constitutional tort claims against CSOSA and the U.S. Attorney in his official capacity.[5]

Crum also vaguely refers to "systematic violation" of an unspecified "federal statute." ECF No. 1-1 at 2; *see id.* at 10 (alleging that the "Unlawful[] Supervision" "Violat[es] . . . federal Statute"); *id.* (referencing "federal Civil Rights Violations"). To the extent he intends to invoke the Civil Rights Act, no "provision" of that Act "may provide [a] basis for an action against the United

---

[4] Nothing in Crum's complaint or pleadings suggests that he sues the U.S. Attorney in his individual capacity. *Cf. Gebretsadike v. D.C.*, No. 23-cv-3198 (RCL), 2024 WL 3291744, at *4 (D.D.C. July 3, 2024) ("When the plaintiff does not formally name a defendant in their individual capacity, that indicates that the plaintiff has pleaded an official capacity rather than an individual capacity claim."). But even liberally construing Crum's complaint as attempting to do so under *Bivens*, he fails to allege any facts to support it. He alleges that "[t]he United States Attorneys are Trained Lawyers who knew before-hand the Systematic federal and local violations they helped Cause before The D.C. Superior Court judge did what she did concerning the Quality of The Unlawful Supervision in question in Direct Violation of Bivens!" ECF No. 1-1 at 11. Missing from these allegations, however, is any suggestion that the U.S. Attorney personally participated in the events giving rise to Crum's claims—*i.e.*, that he *himself* "acted unconstitutionally." *Dial v. Kane*, 315 F. Supp. 3d 556, 559 (D.D.C. 2018). And on top of that, the U.S. Attorney when suit was filed, Matthew Graves, did not assume office until 2021, several years after Crum's conviction, so there is no obvious individual-capacity claim Crum could assert against him. Finally, to the extent Crum seeks to hold the U.S. Attorney responsible for constitutional violations committed by the prosecutors in his underlying conviction, he cannot do so under *Bivens*. *See id.* ("[U]nder *Bivens*, a federal official may not be held liable simply because he is in a position of authority over the alleged individual offender."). Because Crum does not connect the dots between the U.S. Attorney and any possible constitutional violation, he has failed to state a claim upon which relief can be granted against the U.S. Attorney in his personal capacity. *See Burke v. Lappin*, 821 F. Supp. 2d 244, 247–48 (D.D.C. 2011).

[5] It is also far from clear what constitutional right, if any, Crum could assert because "[t]here is no constitutional liberty interest in supervised release under general supervision as opposed to under the supervision of a mental health unit." *Ali*, 538 F. Supp. 2d at 162 n.2.

6

States or a [f]ederal agency." *Jarvis v. DeJoy*, 23-cv-1970 (UNA), 2023 WL 4824736, at *1 (D.D.C. July 27, 2023), *aff'd*, 2023 WL 8177118 (D.C. Cir. Nov. 27, 2023) (citation omitted). And Crum's reference to violations of "local" laws gets him no further: "the laws of the District of Columbia are not federal laws, so they cannot waive federal sovereign immunity." *Ferguson v. McDonough*, No. 22-cv-1302 (TJK), 2022 WL 17668792, at *2 (D.D.C. Dec. 14, 2022); *see* ECF No. 1-1 at 11.

No other liberal construction of Crum's claims saves them. Indeed, "the only possible basis for court jurisdiction" in suits seeking "monetary damages against a federal agency for certain torts committed by federal employees" is the Federal Tort Claims Act ("FTCA"). *Epps v. U.S. Atty. Gen.*, 575 F. Supp. 2d 232, 238 (D.D.C. 2008) (citing 28 U.S.C. § 1346(b)). But even assuming Crum had invoked the FTCA's limited waiver of federal sovereign immunity, the Court would still lack jurisdiction. The FTCA does not permit lawsuits against federal agencies, *see* 28 U.S.C. § 2679(a), and "does not waive sovereign immunity for constitutional torts," *Epps*, 575 F. Supp. 2d at 238. And any conceivable common-law tort that Crum could assert would have to be brought against the United States, and only after exhausting administrative remedies. *See* 28 U.S.C. § 2675.

Finally, even had Crum stated (and exhausted) claims cognizable under the FTCA, another jurisdictional bar—the derivative jurisdiction doctrine—would compel dismissal. Under that doctrine, the Court "deriv[es]" its jurisdiction on removal under 28 U.S.C. § 1442 from that of the state court—here, the Superior Court of the District of Columbia. *Houston Bus. J., Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1211–12 (D.C. Cir. 1996). So if the Superior Court "lack[ed] jurisdiction," then this Court cannot "acquire" it upon removal, even if Crum could have filed his complaint in federal court in the first instance. *Robinson v. U.S. Dep't*

7

*of Health & Hum. Res.*, No. 21-cv-1644 (CKK), 2021 WL 4798100, at *2 (D.D.C. Oct. 14, 2021) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981)).  That doctrine would bar any claims for monetary damages under the FTCA because the statute confers "exclusive" jurisdiction on the *federal* courts.  28 U.S.C. §§ 1346(b)(1), 2679(a).  Thus, the Superior Court would have lacked jurisdiction in the first place, and the Court could not assert jurisdiction on removal.

Because CSOSA and the U.S. Attorney in his official capacity possess sovereign immunity, Crum's claims must be dismissed for lack of subject-matter jurisdiction.  And to the extent he asserts a *Bivens* claim against the U.S. Attorney in his individual capacity, the Court will dismiss it for failure to state a claim.

**B.    Crum Has Failed to State a Claim Against MedStar**

As for MedStar, Crum fails to state any claim against it arising from his visit to the hospital, where staff "escorted" him after "check[ing]" the sex offender registry and discovering his "sensitive charge conviction that happened more than five years ago."  ECF No. 1-1 at 5.  Crum claims these actions violated the "Constitution[]" and his "federal Civil Rights" under *Bivens* and flouted "United States Privacy Laws."  *Id.* at 10, 11; ECF No. 9 at 2.  The Court agrees with MedStar that Crum fails to "identify any claim or cause of action" against it.  ECF No. 7 at 3.

To begin, the Constitution constrains governmental actors and protects private actors.  *See Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 238–39 (D.D.C. 2007).  So "private" entities, "acting in their private capacities, cannot be guilty of" constitutional violations.  *Avila v. CitiMortgage, Inc.*, 45 F. Supp. 3d 110, 122 (D.D.C. 2014) (quoting *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1093 (D.C. Cir. 1980)).  MedStar is a private entity, and Crum has not alleged that the hospital was "not acting in [its] private capacit[y]."  *Id.*  Thus, even putting aside Crum's failure to "clarify what constitutional right has been violated," *Voinche v. Obama*, 744 F. Supp. 2d 165, 176 (D.D.C. 2010) (citation omitted), he has no "right of action, under *Bivens* or any other line of

8

cases, to obtain damages from" MedStar "for constitutional violations," *Richards*, 480 F. Supp. 2d at 239.

Crum's claim for violations of his "federal Civil Rights" fails too. It is unclear how MedStar's actions—running his name through a publicly available database and, upon discovering his criminal conviction, taking precautionary measures to escort him while he was present in its hospital—could violate any federal civil rights statute (or any other statute for that matter). In any event, Crum points to no provision of the Civil Rights Act, let alone one providing for liability against private parties like MedStar. *See Lindke v. Freed*, 601 U.S. 187, 194 (2024) ("[Section 1983 of the Civil Rights Act] protects against acts attributable to a State, not those of a private person."). So his "bare assertion" falls far short of "stat[ing] a civil rights claim of any kind." *Amiri v. Gelman Mgmt. Co.*, 734 F. Supp. 2d 1, 3 (D.D.C. 2010), *aff'd*, 427 F. App'x 17 (D.C. Cir. 2011); *see also Jones v. Nat'l Council on Disability*, 66 F. Supp. 3d 94, 100 (D.D.C. 2014), *aff'd*, 2015 WL 653308 (D.C. Cir. Feb. 5, 2015) (dismissing "vague" "Civil Rights Act claim" where plaintiff did "not allege a violation of any particular Title of the Act").

And for that same reason, Crum's claim for violations of "United States Privacy Laws" must be dismissed. He identifies no provision of any federal law that MedStar purportedly violated, nor does he plead any facts showing how MedStar *could* have violated any privacy law. Indeed, Crum concedes that the sex offender registry is a publicly available database, ECF No. 9 at 2, so it is unclear how MedStar could "use[] [it] in an unauthorized manner." *Id.*[6] And because the registry is government-run, it is implausible that MedStar itself "place[d]" Crum on that "Watch List." ECF No. 1-1 at 5; *see Christian v. Giant Food Stores*, No. 20-cv-2880 (JMC), 2022

---

[6] *See* National Sex Offender Public Website, www.nsopw.gov (last accessed April 16, 2025).

WL 594532, at *2 (D.D.C. Feb. 28, 2022) (dismissing pro se complaint where plaintiff's allegations were "implausible on their face").

Because Crum fails to state a viable claim for any constitutional or other violations against MedStar, the Court will grant its motion to dismiss.

## IV.    Conclusion

For all these reasons, the Court will grant the U.S. Attorney's and CSOSA's motion to dismiss for lack of subject-matter jurisdiction and grant MedStar's motion to dismiss for failure to state a claim. A separate order shall issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: April 18, 2025